MYERS v. McDONALD, Sheriff.

I. Per CURIAM.

1. Husband and wife: LIABILITY OF WIFE'S PROPERTY. If a married woman suffers her personal property to pass into the possession and under the control of her husband, without having filed with the recorder of deeds notice of her ownership as provided by the statute (Rev. §§ 2500, 2502), it is liable to be taken in execution to satisfy the claim of one who gave credit to the husband while the property was in the husband's possession, and who had no notice of the wife's ownership at the time such credit was given.

2. —— It was accordingly *held,* that property thus in the possession of the husband might be taken in execution to satisfy a judgment rendered upon a note executed by the husband before such possession commenced, but negotiated thereafter, and while the possession continued, the assignee having no notice at the time he received the note of the wife's claim to the property, although notified thereof at the time of the levy.

II. Per DILLON, Ch. J., WRIGHT, J., concurring.

3. —— The husband being in the possession of the property, and having the apparent ownership thereof at the time the assignee received the note, a new credit was, in contemplation of law, given to the husband by the assignee.

### III. Per WRIGHT and BECK, JJ.

4. —— NOTICE OF WIFE'S OWNERSHIP. In order to protect the interest of the wife, in specific articles of personal property, which she allows to pass into the possession and under the control of the husband, the record notice provided by the statute is in all cases essential. Actual notice will not suffice.

### IV. Per COLE, J., dissenting.

5. —— Actual notice of the wife's ownership is as effectual in protecting her rights as the constructive notice arising from the recording of the notice provided for by section 2502 of the Revision.

6. —— It is not in the power of a creditor to change or affect the rights of his debtor, or third persons, without their knowledge or consent, and the assignee of the note in the present case, therefore, is to be regarded as standing in no better position than would his assignor.

*Appeal from General Term Second District (Monroe.)*

FRIDAY, JUNE 25.

HUSBAND AND WIFE : REVISION, CHAPTER 101, CONSTRUED : LIABILITY OF WIFE'S PROPERTY FOR HUSBAND'S DEBTS.—This is an action of replevin, brought by the plaintiff (a married woman) against the defendant, as sheriff, to obtain possession of a mule colt, levied upon by the sheriff as the property of the plaintiff's husband. The question in the case is, whether the plaintiff can hold the colt exempt from liability to be seized and sold for the debts of her husband ?

The sheriff recovered before the justice, and the plaintiff appealed to the Circuit Court, where the defendant again succeeded. The plaintiff appealed to the General Term, which, by a majority of the judges — the Circuit judge dissenting — reversed the judgment of the Circuit Court, and remanded the cause for trial *de novo*. The judges of the General Term made the proper certificate

to allow an appeal to this court, and accordingly the defendant appeals from the judgment of the General Term, and asks that it may be reversed.

The question of law in the case arises out of the following facts as found by the Circuit Court, viz. :

"That the plaintiff is a married woman, having been the wife of Alexander Myers for about 21 years, and is now living with him on his farm in Monroe county, Iowa. In January or February, 1863, the plaintiff obtained some money from the United States, as the bounty and back pay of her son (by a former husband) who had died in the military service. The money was the individual property of the plaintiff, and the said Alexander Myers had no right thereto or interest therein.

" With said money the plaintiff, in February, A. D. 1863, purchased a mare from one Bigham, and held and owned said animal as her own separate property until the time of its death, which was some time during the year 1868. The plaintiff, during all the time that she owned said mare, living with her husband, the said Alexander Myers, and the said mare being in his possession and under his control, and no notice of any kind being placed on record with the recorder of deeds, as required by the provisions of chapter one hundred and one of the Revision of 1860.

" That the mule in dispute was foaled by said mare in June, 1867 ; that the plaintiff has never transferred her interest in said mule to any other person, and that the said mule is her individual property; that the said mule has been left in the possession and under the control of the husband, Alexander Myers, and that no notice has been placed on record as required by chapter one hundred and one of the Revision.

" It is further found that, on the first of January, 1861, the said Alexander Myers became the maker of a prom-

issory note, payable to Eli De₁Tar, or order, for the sum of thirty-eight dollars and sixty-two cents, payable one day after date, with ten per cent interest after due till paid.

" That on the 5th day of January, 1867, said note was transferred by the said De Tar to James W. Robb, without recourse.

" That, in the year 1868, the said Robb brought suit on said note against the said Alexander Myers and obtained judgment thereon ; that execution was issued against the said Alexander Myers on said judgment, and that under said judgment the sheriff of Monroe county, some time in January, 1869, and before the commencement of this suit, levied upon the said mule as the property of the said Alexander Myers, having been, however, personally notified before said levy that the said mule was not the property of the said Alexander Myers, but of the plaintiff, and having been forbidden by plaintiff to levy on said mule ; that plaintiff made no demand after said levy and before the commencement of this suit.

" From the foregoing facts the court draws the following as its conclusions of law :

" That, as between plaintiff and her husband and all creditors of the husband whose debts were contracted before the purchase of said mare, the said mare and mule were the separate property of plaintiff, and that such creditors would have no right to levy on said mare or said mule.

" That the debt against the said husband, having been assigned after the plaintiff became the owner of said mare, and while the said mare was under the control of the husband, and no notice of plaintiff's right on record, in contemplation of law, a new credit is thereby given to the said Alexander Myers by the assignee, and the apparent ownership and control of the said Alexander

Myers over said property will be considered as having a tendency to mislead the said assignee, and inducing him to change his position by becoming the purchaser of said debt.

"That said assignee, having recovered judgment and issued execution on said debt, had the right to levy on said mule to satisfy the same.

"That the petition shows that no demand in that case was necessary. Judgment for defendant, and plaintiff excepts.

"HENRY L. DASHEILL,
"*Circuit Judge.*"

The material sections of the statute relating to the question decided by the court are found in chapter 101 of the Revision, and are as follows:

"§ 2499. The personal property of the wife does not vest at once in the husband, but, if left under his control, it will, in favor of third persons acting in good faith and without knowledge of the real ownership, be presumed to have been transferred to him, except as hereinafter provided.

"§ 2500. If the wife has such property which she leaves under his control, she must, in order to avoid the entire surrender of her interest therein, file for record with the recorder of deeds, a notice stating the amount in value of such property, and that she has a claim therefor out of the estate of her husband; and if during her lifetime he dies or becomes insolvent, she shall be deemed a preferred creditor of the estate to that amount without interest, and may hold and control the same in her own right; but this preference shall not prejudice the interests of those creditors who became such after the property was thus placed under the husband's control and before the filing of the notice aforesaid, unless they had knowledge of her rights in that respect.

"§ 2501. The provisions of the preceding section shall not prevent the necessity of proof, on the part of the wife, of the actual amount of property thus in good faith placed by her under the control of her husband, but the notice aforesaid will, after the lapse of five years from the time of the recording thereof, be presumptive evidence of the facts therein stated in this respect.

"§ 2502. Specific articles of personal property may be owned by the wife exempt from the husband's debts, although left under his control, if during his life-time, and prior to its being disposed of by him or levied upon for his debts, notice of her ownership is filed for record with the recorder of deeds of the county. But such notice shall not exempt her property from liability for his debts contracted after it was left under his control and before the filing of the notice aforesaid, except as against those having knowledge of her rights."

*Perry & Townsend* for the defendant (appellant).

*Yocum & Case* for the appellee.

DILLON, Ch. J. — There is no suggestion or claim on behalf of either party that the colt in controversy does
1. HUSBAND AND not, as respects the rights and liabilities of
WIFE: liability
of wife's prop- the parties, take the place of the mare by
erty. · which it was foaled.

The material facts may be briefly stated.

1. That the colt is, *as respects the husband*, the property of the wife, and not his. This, though disputed by the defendant's counsel, is found to be the fact by the Circuit Court, and the evidence, which we have examined, sustains this finding.

2. No notice of the wife's ownership of the mare or colt was ever filed for record.

3. It is not shown that Robb, the creditor, represented by the defendant as sheriff, had actual notice at the time he acquired the note that the mare was the property of the wife.

4. The original debt to De Tar was contracted before the purchase of the mare by the wife.

5. The mare and colt were left in the possession and under the control of the husband, and the mare was so in his possession and control at and before the time when Robb purchased the note against the husband.

6. Though Robb, at the time he purchased the note, had no actual notice of the rights of the wife, yet the sheriff was notified of her right at the time he went to make the levy and before the levy was made.

At common law the superior right of the defendant would be indisputable. The wife's right is based wholly upon the statute. If that gives it she has it, otherwise not. Her claim is to a specific article of personal property as being exempt from her husband's debt. The statute (Rev. ch. 101) points out the method by which such exemption may be secured. Section 2502 of the Revision, copied in the statement, is the one whose construction is involved in the cause before us. This is of course to be read in the light which its associate sections shed upon it.

The mare and colt were left under the husband's control; and there is no evidence that Robb, at the time he became a creditor of the husband, had any knowledge of the real ownership of the property.

Section 2502 applies to such a case, and provides that the property may be exempt from the husband's debts, if, before it is levied upon, notice of the wife's ownership is filed for record.

No other notice is provided for; and this mode, to wit, the filing of such a notice, is the only mode prescribed

by the statute by which the right of the wife as against the husband's creditors can be protected.

The last sentence of the section (2502) is in the nature of an exception. And the exception is, that "such notice," that is, a written notice filed for record, "shall not exempt her property from liability for his debts contracted after it was left under his control and before the filing of the notice aforesaid, except as against those having knowledge of her rights."

Respecting this last sentence two views are pressed. One is that this contemplates that a written notice shall be filed for record in all cases, and that actual knowledge of the wife's ownership by the creditor will in no case avail any thing to the wife, unless she has filed a written notice of her rights. The other view is that actual notice of the wife's rights will dispense with the necessity of her filing for record a notice of her ownership.

The court do not entirely agree respecting this point; and the present case can be ruled without conclusively passing upon it.

A majority of the court are of opinion that, under the facts of this case, viz. : want of actual notice by Robb, at the time he acquired the note of the wife's real ownership, and the total absence of any notice of record of her rights, that the property was liable to be seized and sold for her husband's debts.

Where no written notice has at any time been filed for record, the opinions of the different judges upon the statute are not entirely concurrent.

Where the husband is in debt, and the wife leaves specific articles of personal property under his control, *record*

4. —— notice    *notice* is, according to the opinion of Mr. Jus-
of wife's own-
ership.          tice WRIGHT and Mr. Justice BECK, in all cases, essential to protect the interest of the wife. This view rests upon the argument that even such creditors may be

deceived and delayed in the assertion of their rights by the apparent ownership of the husband, and upon the further ground that this is the mode, and the only mode, provided by the statute for the wife's protection.

COLE, Justice, dissents, basing his view upon the proposition that actual notice is equivalent to record notice, and that actual notice is contemplated by the statute (latter part of § 2502); that, as to prior creditors, that is, creditors who became such before the wife purchased the property, and before it passed under the husband's control, it is sufficient to give actual notice of the wife's rights at any time before the property is levied on for the husband's debts.

DILLON, Chief Justice, without giving any opinion on the point as to which Justices WRIGHT and BECK concur, is of opinion that where the creditor, at the time he becomes such, has no actual notice and no record notice of the wife's rights, no subsequent actual notice can affect him, and he regards Robb as becoming a creditor at the time he purchased the note, and as having, so far as the statute under consideration is concerned, all the rights that he would have had if, instead of buying the note, he had, at that time, extended credit to the husband without knowledge of his wife's rights.

In this view, as to Robb, being in effect a new creditor, as being "a third person acting in good faith," as of the date of his purchase of the note, WRIGHT, J., concurs: COLE and BECK, JJ., are of a different opinion as to Robb becoming a new creditor.

The purpose of the statute, as disclosed by the language of each section relating to the rights of the wife, is so manifest in subordinating her rights to those of third persons acting in good faith; to the rights of persons becoming creditors without the knowledge of her latent ownership of property used and controlled by the hus-

band, that it is not deemed essential to enlarge the discussion.

The result is that a majority of the court are of opinion that upon the facts found the law is with the defendant, and the judgment of the General Term will be reversed and the cause remanded, with directions to the Circuit Court to enter the proper judgment for the defendant. COLE, J., dissenting.

Reversed.

COLE, J. (dissenting). — The Chief Justice has stated, with conciseness and perspicuity, the conclusions of each member of the court, and. yet I feel that the importance of the question demands that I shall state more fully my views. At the common law, the personal property of the wife vested by the marriage in the husband. But our statute (§ 2499) has abrogated that rule, and declares that the personal property of the wife does not vest at once in the husband. This statute has completely changed the common-law rule. But it has also provided that, under certain circumstances, this property of the wife may be taken to pay the debts of the husband. If the creditor of the husband would take the wife's property to pay the husband's debts, the creditor must show such facts as under the statute entitles him to it. It is *her* property under the statute, and in *equity* the creditor has no right to it, but must bring himself within the *statute* in order to entitle himself to take *her property* to satisfy the *husband's debts*.

In my view, section 2502, which requires the wife to file file for record a notice of her ownership with the recorder of deeds, is to be construed just like every other registration law ; that is, as affording constructive notice of her ownership ; and that, like the rule of law as applied to all other recording acts, actual notice of her ownership is as good and effective in protecting the wife's rights as the con-

structive notice arising from recording the evidence of her ownership. In other words, the object of the statute in requiring the record of her ownership, is to give notice to the creditors, and if they have actual notice otherwise, the whole object of the statute is accomplished and the rights of creditors thus notified as fully protected. So that the last clause of section 2502, instead of being a special exception made by force of the statute, is only declarative of what the law was before it was enacted, and just what the courts would have enforced without the clause being added.

In my view, also, Robb, the assignee of the note, years after its maturity, stands in no better position than would De Tar, his assignor. That it is not in the power of a creditor to change or affect the rights of the debtor or third persons without their knowledge or consent. Suppose Robb was asserting a claim to the homestead of Myers and wife, and in support of his claim showed that the homestead was acquired after the debt was contracted to De Tar; could his claim be defeated by showing that the homestead was acquired before he became the owner of the note? Certainly not, and so we have held. Now, I hold that the same rule applies in this case; and that, as between the debtor and his orignal creditor, or any assignee thereof, the debt was " contracted " at the time the obligation was incurred, and not that the debt was " contracted," anew at the dates of the several successive transfers thereof. We have held that, to protect a creditor and enable him to take the homestead under section 2281, making it liable for debts contracted prior to its purchase, the debt shall be deemed to have been contracted at the date the indebtedness was created. But, my brothers also now hold, to protect the same creditor, and enable him to take the wife's property to pay the husband's liability, that the debt shall in such case be

deemed to have been contracted at the time the indebtedness was *assigned*. Thus the rule is changed in order to protect creditors, without, as I think, any authority of law or any rule in equity requiring or justifying such change.

I think the judgment of the General Term should be affirmed.